```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PERRIGO COMPANY, et al.         :      CIVIL ACTION
                                :
          v.                    :
                                :
ABBVIE, INC., et al.            :      NO. 20-2132
```

MEMORANDUM

Bartle, J.                                              October 21, 2020

Plaintiffs Perrigo Company, Perrigo Israel Pharmaceuticals, Ltd., and Perrigo Company of South Carolina, Inc. ("Perrigo"),[1] wholesalers who manufacture and market generic pharmaceuticals, bring this civil antitrust action under the Sherman Act, 15 U.S.C. § 2, in which Perrigo seeks treble damages and other relief arising out of prior patent litigation which defendants had brought against plaintiffs related to a patented drug called AndroGel.  See Abbott Prods., Inc., et al. v. Perrigo Company, et al., 2011 WL 5314659 (D.N.J. Oct. 31, 2011) ("New Jersey Action").  AndroGel is a brand-name transdermal testosterone gel product approved by the FDA for the

---

[1] The complaint alleges that "Perrigo"— defined to mean Perrigo Israel, Perrigo Company, and Perrigo Company of South Carolina — filed the non-disclosure agreement, as well as sent the notice and litigated the patent infringement case that are discussed in this Memorandum.  We will likewise generally use the complaint's convention of referring to "Perrigo" generically, even though one Perrigo entity, Perrigo Company of South Carolina, was not a defendant in the patent litigation or a party to the settlement of it.

treatment of hypogonadism, a clinical syndrome that results from failure of a man's body to produce adequate amounts of testosterone. Perrigo alleges that all defendants, AbbVie Inc., Abbot Laboratories, Unimed Pharmaceuticals, LLC, and Besins Healthcare, Inc., ("defendants") maintained monopoly power in the relevant market by using the sham New Jersey Action and other exclusionary conduct to minimize competition and decrease Perrigo's sales profits.

Before the court is the motion of defendants to transfer venue of this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of New Jersey pursuant to the terms of a March 27, 2012 Settlement and License Agreement ("Settlement Agreement") between the parties resolving the New Jersey Action.

I

The parties in this action have a long and involved history. See Fed. Trade Comm'n v. AbbVie Inc., 2020 WL 5807873 (3d Cir. Sept. 30, 2020). Relevant to this particular action, defendants filed a patent infringement suit against Perrigo in New Jersey on October 31, 2011. Subsequently, on March 27, 2012, all parties, represented by experienced and sophisticated counsel, entered into a Settlement Agreement. Among the terms and conditions of the Settlement Agreement, Section 7.1 states, in relevant part:

>  [the parties] . . . hereby fully, finally and forever release, relinquish, acquit and discharge the other Parties and each of their respective Affiliates . . . from any and all claims . . . arising out of, related to, or in connection with . . . [the patent litigation] . . . whether known or unknown . . .

Section 11.1 of the Settlement Agreement states, in relevant part:

> The [Settlement] Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey. With respect to any proceeding relating to this Agreement, each Party irrevocably agrees and consents to the exclusive jurisdiction of the federal and state courts in New Jersey and waives any objection to venue of any such proceeding brought in any such court.

                                    II

28 U.S.C. § 1404(a) provides, in relevant part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

It is undisputed that venue is proper in the Eastern District of Pennsylvania under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) since defendants transact business within this district.  Once a court determines that venue is proper, it must generally evaluate the various private and public factors set forth in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995) to determine whether a transfer is appropriate.  As our Court of Appeals has explained, "[t]he burden of establishing the need for

transfer . . . rests with the movant," and generally, "the plaintiff's choice of venue should not lightly be disturbed." Id at 879.

Here, there is a contractual forum selection clause. The Supreme Court has stated that, "the calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63, (2013) (internal quotations and citations omitted). Accordingly, "when the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. A valid forum-selection clause should be "given controlling weight in all but the most exceptional cases" and a motion to transfer should be denied "only under extraordinary circumstances." Id. at 62. The Supreme Court has explained:

> when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

Id. at 63-64. A court evaluating a defendant's motion to transfer based on a forum-selection clause also "should not consider

-4-

arguments about the parties' private interests" because the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves." Id. at 64.  As a result, a court "may consider arguments about public-interest factors only." Id.  Public interest factors that we may consider include:  (1) the enforceability of the judgment; (2) court congestion of the different fora; (3) local interest in deciding local controversies at home; (4) public policies of the fora; and (5) familiarity of the trial judge with the applicable law in state diversity cases. Jumara, 55 F.3d at 879.

                                III

Defendants maintain that this action should be transferred to the District of New Jersey because the parties signed a binding Settlement Agreement in the New Jersey Action and that defendants "intend to assert the Settlement Agreement's release as a defense to Perrigo's claim."  A defense predicated on an agreement is sufficient to trigger that agreement's forum selection clause.  See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 (3d Cir. 1997).

Defendants further argue that Perrigo has failed to meet the Atlantic Marine burden to defeat transfer because courts must enforce forum selection clauses absent extraordinary and rare circumstances in which the public interest factors "overwhelmingly" weigh against enforcement.  Atl. Marine, 571 U.S. at 76.

Plaintiffs counter that public interest factors do not support transferring this case to the District of New Jersey. They first assert that this court is familiar with the issues in this matter since it decided F.T.C. v. AbbVie Inc., 107 F. Supp. 3d 428 (E.D. Pa. 2015) ("FTC case"). Plaintiffs note that the complaint "draws directly from this court's findings of fact and conclusions of law" in the FTC case. According to Perrigo, this court's involvement in the FTC case was "substantial and pervasive" since the trial lasted for three weeks and the transcript spanned over 3,600 pages.

In addition, plaintiffs argue that the District of New Jersey has a "substantially more congested docket" than the Eastern District of Pennsylvania and is "in a recognized state of judicial emergency." Perrigo maintains that public interest does not support "transferring a case from a court that is ably disposing of its caseload to one so overwhelmed that its caseload constitutes a 'judicial emergency.'" See Strategic Benefit Sols. Corp v. Benefitelect, Inc., 2020 WL 4364329, at *5 (D.N.J. July 29, 2020).

The majority of the public factors do not weigh heavily in our analysis. Specifically, the enforceability of the judgment, public policies of the fora, and local interest in deciding local controversies at home are neutral factors because the causes of action at issue here arise under federal law. See Scanlan v. Am. Airlines Grp., Inc., 366 F. Supp. 3d 673 (E.D. Pa. 2019). As to

the court's familiarity with the facts of the case, plaintiff cites no authority, and the court is aware of none, where a court's knowledge of certain issues gained through presiding over a related case can overcome a valid, mutually bargained-for forum selection clause.

As to court congestion, we acknowledge that the District of New Jersey is operating under a judicial emergency as a result of a number of long-standing judicial vacancies. In order to alleviate this unfortunate situation, D. Brooks Smith, the Chief Judge of the United States Court of Appeals for the Third Circuit, with the cooperation and support of the District of New Jersey, has reassigned a number of civil cases from that District to judges, including the undersigned, in the Eastern District of Pennsylvania. While these reassignments have not eliminated the issue of congestion, the situation in the District of New Jersey is not an "extraordinary circumstance" sufficient to overcome a valid forum-selection clause. Atl. Marine, 571 U.S. at 52.

Plaintiffs cite to only one case following the Atlantic Marine decision where a court declined to transfer venue despite the presence of a forum selection clause. See Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls, Inc., 2015 WL 65298 (E.D. La. Jan. 5, 2015). Perrigo's reliance on Bollinger is inapposite. While the Court in Bollinger declined to order a transfer "against the considerable weight of the forum-selection

clause," it is important to note that the parties had litigated the case in the original forum, the Eastern District of Louisiana, for six years before defendant attempted to invoke a forum-selection clause and transfer the action to the Southern District of Mississippi.  Before the motion to transfer was filed, the court in the Eastern District of Louisiana had ruled on multiple substantive motions submitted and contested by defendant.  In contrast, this court has not made any substantive rulings in this matter, and defendants moved to transfer four months after plaintiffs filed the complaint.

Finally, plaintiff does not dispute that the Settlement Agreement contains a valid forum-selection clause.  There is no indication that this was a contract of adhesion, where one party had no "bargaining power" when it entered into the contract or that the contract was dictated by the "lack of meaningful choice."  See Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3d Cir. 1998).  Indeed, all parties involved are large corporations with experienced and sophisticated counsel.  Under such circumstances, our Court of Appeals applies "what amounts to a strong presumption in favor of enforcing [the] forum-selection clause[]."  In re Howmedica Osteonics Corp., 867 F.3d 390, 403 (3d Cir. 2017).

Accordingly, the motion of defendants to transfer venue to the United States District Court for the District of New Jersey will be granted.